☒ FILED    ☐ LODGED

**Jun 22 2026**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

TIMOTHY COURCHAINE
United States Attorney
District of Arizona
MATTHEW WILLIAMS
Assistant U.S. Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Matthew.Williams3@usdoj.gov

LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice
WILLIAMS HOCHUL III
SHANE BUTLAND
Trial Attorneys
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-538-4256
Email: William.Hochul.iii@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          vs.<br><br>Susie Kamien,<br><br>                    Defendant. | No.   CR-26-00676-PHX-KML (MTM)<br><br>**I N F O R M A T I O N**<br><br>**VIO:**   18 U.S.C. § 1349<br>(Conspiracy to Commit<br>Health Care Fraud)<br>Count 1<br><br>18 U.S.C. §§ 981(a)(1)(C)<br>and 982(a)(7);<br>21 U.S.C. § 853; and<br>28 U.S.C. § 2461;<br>(Forfeiture Allegation) |

THE UNITED STATES ATTORNEY'S OFFICE CHARGES:

**BACKGROUND**

At all times relevant to this Information:

**The Medicare Program**

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part B" covered, among other things, medical items and services provided by physicians, nurse practitioners, group practices, and other qualified health care providers, that were medically necessary and ordered by licensed medical doctors or qualified health care providers.

4. Physicians, nurse practitioners, group practices, and other health care providers (collectively, "providers") that provided services to beneficiaries were able to apply for and obtain a "provider number." A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for items and services provided to beneficiaries.

5. To enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute. Medicare paid for claims only if the items and services were medically reasonable,

- 2 -

medically necessary for the treatment or diagnosis of the patient's illness or injury, accurately documented, and provided as represented to Medicare. Medicare would not pay for items and services that were procured through illegal kickbacks or bribes.

6.     Medicare covered access to certain bioengineered skin substitutes, including some amniotic membrane allografts made from human placental tissue ("allografts"). These allografts were applied over open wounds to assist with wound closure or skin growth. Medicare reimbursed providers for certain allografts furnished to Medicare beneficiaries only if the allografts were medically reasonable, medically necessary for the treatment or diagnosis of the beneficiary's illness or injury, accurately documented, provided as represented to Medicare, and not procured through illegal kickbacks or bribes.

**The Defendant and Related Entities**

7.     Defendant SUSIE KAMIEN was a resident of West Chester, Illinois. SUSIE KAMIEN owned and operated Lucid Medical Solutions LLC ("Lucid").

8.     Lucid was a limited liability company formed under the laws of Illinois, with its principal place of business in Oakbrook Terrace, Illinois. Lucid provided billing services to medical practices and providers, including Apex Mobile Medical LLC ("Apex Mobile") and APX Mobile Medical LLC ("APX").

9.     SUSIE KAMIEN, acting through Lucid, submitted claims to Medicare and other health care benefit programs for amniotic allografts sold by Company 1 on behalf of Medicare-enrolled providers, including Apex Mobile and APX.

10.     Apex Mobile was a limited liability company formed under the laws of Arizona, with its principal place of business in Phoenix, Arizona. Apex Mobile was an enrolled Medicare provider and submitted claims to Medicare and other health care benefit programs for payment, including claims for the furnishing of allografts purchased from Company 1.

11.     APX was a limited liability company formed under the laws of Arizona, with its principal place of business in Phoenix, Arizona. APX was an enrolled Medicare provider

and submitted claims to Medicare and other health care benefit programs for payment, including claims for the furnishing of allografts purchased from Company 1.

12.     Apex Medical LLC ("Apex") was a limited liability company formed under the laws of Arizona, with its principal place of business in Phoenix, Arizona. Apex arranged for and recommended the ordering and purchasing of allografts sold by Company 1. Apex referred patients to Apex Mobile and APX for the furnishing of allografts purchased from Company 1.

13.     Company 1 was a limited liability company formed under the laws of Texas, with its principal place of business in Fort Worth, Texas. Company 1 was a wholesale distributor of allografts.

**COUNT 1**
**18 U.S.C. § 1349**
**(Health Care Fraud Conspiracy)**

14.     Paragraphs 1 through 13 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

15.     Beginning in or about June 2022, and continuing through in or about April 2024, in the District of Arizona and elsewhere, defendant SUSIE KAMIEN did knowingly and willfully combine, conspire, confederate, and agree with individuals associated with Apex Mobile, APX, Apex, and Company 1, and others known and unknown to the United States, to execute a scheme and artifice to defraud Medicare and other health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**Purpose of the Conspiracy**

16.     It was the purpose of the conspiracy for KAMIEN and others, known and unknown to the United States Attorney's Office and the Criminal Division of the United States Department of Justice, to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare and other health care benefit programs for items and services that were medically unreasonable and unnecessary, ineligible for reimbursement, and procured through kickbacks and bribes; (b) concealing the submission of false and fraudulent claims to Medicare and other health care benefit programs and the receipt and transfer of the proceeds of the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of KAMIEN and her co-conspirators, and to further the fraud.

**Manner and Means**

17.     The manner and means by which KAMIEN and her co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

18.     In or around June 2022, KAMIEN, on behalf of Lucid, signed a services agreement with Company 1 in which KAMIEN agreed to provide reimbursement support, including answering coding and billing questions, for Company 1's representatives and customers. In this role, KAMIEN assisted the providers with billing Medicare and other health care benefit programs for Company 1 allografts.

19.     KAMIEN, through Lucid, contracted with providers, including Apex Mobile and APX, to submit claims to Medicare and other health care benefit programs for allografts that providers purchased from Company 1 and applied to Medicare beneficiaries. Providers paid KAMIEN a percentage of the amount reimbursed by Medicare and other health care benefit programs for the claims that KAMIEN and Lucid submitted for Company 1 allografts and services related to the application of those allografts.

20.     KAMIEN, through Lucid, submitted claims to Medicare for medically-unnecessary Company 1 allografts that were ordered and applied based on the sizes and quantities determined by medically-untrained sales representatives. The sales

representatives identified elderly Medicare beneficiaries with a wound or wounds of any stage to which Company 1 allografts could be applied, arranged for and recommended the ordering and purchasing of Company 1 allografts, and referred the patients to enrolled Medicare providers, who applied the allografts without exercising independent medical judgment.

21. KAMIEN, through Lucid, submitted claims to Medicare that were procured through illegal kickbacks and bribes paid to sales representatives to induce the sales representatives to (a) arrange for and recommend the ordering and purchasing of Company 1 allografts and (b) refer Medicare beneficiaries to providers for the furnishing of Company 1 allografts.

22. KAMIEN, through Lucid, submitted claims to Medicare that were procured through illegal kickbacks and bribes in the form of rebates that providers received from Company 1 in exchange for purchasing and ordering Company 1 allografts.

23. KAMIEN, through Lucid, submitted claims to Medicare that were procured through illegal kickbacks and bribes that Company 1 funneled to APX through a sham entity to induce APX to purchase and order Company 1 allografts.

24. KAMIEN and others falsely represented to Medicare the actual amount that providers paid for Company 1 allografts. These false claims fraudulently inflated the amount of Medicare's reimbursements to providers, which in turn increased the amounts the providers paid to KAMIEN through Lucid.

25. From in or about November 2022 through in or about April 2024, KAMIEN, through Lucid, submitted over $918 million in false and fraudulent claims to Medicare on behalf of Apex Mobile and APX for Company 1 allografts that were medically unreasonable and unnecessary, ineligible for reimbursement, and procured through illegal kickbacks and bribes. Medicare paid Apex Mobile and APX over $594 million based on those claims.

26.    Apex Mobile and APX paid KAMIEN, through Lucid, approximately $16,834,971 in exchange for submitting false and fraudulent claims to Medicare and other health care benefit programs.

### FORFEITURE ALLEGATION
**(18 U.S.C. §§ 981(a)(1)(C), 982(a)(7); 21 U.S.C. § 853; and 28 U.S.C. § 2461)**

27.    The above allegations contained in this Information are hereby incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture against the defendant, SUSIE KAMIEN, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461.

28.    Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), together with Title 28, United States Code, Section 2461, as a result of the foregoing violation as charged in Count 1 of this Information, KAMIEN shall forfeit to the United States: any property, real or personal (a) which constitutes or is derived from proceeds traceable to the commission of the offense, and (b) that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

29.    Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of the defendant's violation as charged in Count 1 of this Information.

30.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), KAMIEN shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially

diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

Dated this 18th day of June, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

Digitally signed by MATTHEW WILLIAMS
Date: 2026.06.18 12:45:43 -07'00'

MATTHEW WILLIAMS
Assistant U.S. Attorney

LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

WILLIAM HOCHUL III
SHANE BUTLAND
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice